# EXHIBIT A

## IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

KATHY DUBRASKY and
IVAN DUBRASKY                    :

    Plaintiffs                    :
        vs.                        :
                                          NO. _10411/15_, C.A.

Hilcorp Energy Company,        :
A.K.A. HILCORP,
and its Officers, Agents and Subsidiaries    :

    Defendant                    :

TYPE OF PLEADING:
**COMPLAINT AT LAW
AND IN EQUITY**

FILED ON BEHALF OF:
**KATHY DUBRASKY and
IVAN DUBRASKY**

COUNSEL FOR THIS PARTY:
Angelo A. Papa, Esquire
Supreme Court #47049
318 Highland Avenue
New Castle, PA 16101
(724) 654-8111
(724) 654-6766 Fax

**JURY TRIAL DEMANDED**



FILED
APR 2 1 2015
PRO & CLERK

1

## IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

KATHY DUBRASKY and           :
IVAN DUBRASKY                :
                           :

    Plaintiffs                :
        vs.                :       NO. _10411/15_ , C.A.
                           :

Hilcorp Energy Company,        :
A.K.A. HILCORP,              :
and its Officers, Agents and Subsidiaries   :
                           :

    Defendant               :

### NOTICE TO DEFEND AND CLAIM RIGHTS

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action with twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:**

Office of Lawyer Referral
Third Floor
Lawrence County Government Center
430 Court Street
New Castle, PA 16101
(724) 656-1921

AMERICANS WITH DISABILITIES ACT OF 1990

The Court of Common Pleas of Lawrence County is required to comply with the Americans Disabilities Act of 1990. For information about accessible facilities and reasonable accommodations available to disabled individuals having business before the Court, please contact our office. All arrangements must be made at least 72 hours prior to any hearing or business before the Court. You must attend the scheduled conference or hearing.

2

# IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

KATHY DUBRASKY and :
IVAN DUBRASKY :
 :
 Plaintiffs :
  vs. :  NO. 10411 15 , C.A.
 :
Hilcorp Energy Company, :
A.K.A. HILCORP, :
and its Officers, Agents and Subsidiaries :
 :
 :
 Defendant :

## COMPLAINT AT LAW AND IN EQUITY

NOW COMES the Plaintiffs, KATHY DUBRASKY and IVAN DUBRASKY, by and through their legal counsel, Attorney Angelo A. Papa, Esquire and hereby file this Complaint, stating as follows:

1. Plaintiff IVAN DUBRASKY is an adult individual residing at 5349 Old Pulaski Rd. New Wilmington Pennsylvania, 16142. Mr. Dubrasky has resided in Pulaski Township for his entire life, 67 years.

2. Plaintiff KATHY DUBRASKY is an adult individual also residing at 5349 Old Pulaski Rd. New Wilmington Pennsylvania, 16142.

3. The Plaintiffs' Kathy and Ivan are Husband and Wife.

4. Defendant HILCORP ENERGY COMPANY is an oil and gas extraction company with its principal place of business located at 1201 Louisiana Street, Suite 1400 Houston, Texas 77002, and doing business in Pennsylvania out of its regional office at 586 Northgate Circle, New Castle, PA 16105 hereinafter referred to as "HILCORP".

3

5. Defendant, in addition to other business practices and drilling techniques, is an operator and developer in the area of unconventional, deep-well, oil and gas drilling and exploration that utilizes horizontal drilling and hydraulic fracturing, colloquially and locally known as, "fracking".

6. The Pennsylvania Supreme Court, in the case of _Robinson Township v. Commonwealth_, clearly identified unconventional, deep-well, oil and shale gas development, utilizing horizontal drilling and hydraulic fracturing, and its accompanying seismic testing, explosions, excessive light, noise, dust, mini-earth quakes, 24 hours per day and 7 days per week operation, potential pollution, large water consumption, potential water contamination, and excessively loud industrial trucks and equipment as clearly and obviously an industrial property use that will have a long term negative environmental impact. _Robinson Township v. Commonwealth, 83 A.3d 901, 979 (Pa. 2013)._

7. The Pennsylvania Supreme Court referred to unconventional oil and shale gas development, utilizing horizontal drilling and the hydraulic fracturing as "an industrial oil and gas operation", and stated that, "the fracking operations and exploitations of the Marcellus Shale at issue here, the provisions compel exposure of otherwise protected areas to environmental and habitability costs associated with this particular industrial use: air, water, and soil pollution; persistent noise, lighting, and heavy vehicle traffic; and the building of facilities incongruous with the surrounding landscape". _Robinson Township v. Commonwealth, 83 A.3d 901, 979 (Pa. 2013)._

8. Plaintiffs Ivan and Kathy Dubrasky are residents of, and agricultural zone property owners in, Pulaski Township, owning the real property located at 5349 Old Pulaski Rd. New Wilmington Pennsylvania, 16142, hereinafter referred to as "THE PROPERTY".

4

9. The Plaintiffs purchased the property located at 5349 Old Pulaski Rd from Ivan's parents' estate in approximately 1999.

10. The house on the property was built by Ivan's grandfather, passed to Ivan's father, and now Ivan is the third generation Dubrasky family member in his home.

11. Plaintiffs purchased this property to enjoy a quiet, rural, residential home and lifestyle.

12. The property is 1.7 acres in size and is located in an agricultural zone in Pulaski, ¼ mile from the Shenango River and the State Game Lands.

13. The water source that serves Ivan's property and home is well water.

14. Ivan is retired from Penn Power and he and his wife Kathy have historically enjoyed the peace and quiet of their home and area and planned on using the equity in the property to assist with their retirement income.

15. The Plaintiffs' home and area has recently, however, ceased to be a place of any peace and quiet or resemble an agricultural area in any way.

16. Following public hearings before the Pulaski Township Board of Supervisors on October 22nd and November 19th, 2014, the Pulaski Township Board of Supervisors issued a Written Decision, Findings of Fact, and Conclusions of Law approving, as a conditional use, a "well-pad for oil and gas extraction" on the Lorrie D. Speir-Chrastina Property on Old Pulaski Road in Pulaski Township, Lawrence County, Parcel I.D. No. 29-080300., hereinafter known as the Chrastina well.

17. Defendant Hilcorp Energy Company was the zoning applicant and is the operator and developer of this unconventional, deep well, oil and gas development and well-pad that utilizes the combination of horizontal drilling and hydraulic fracturing.

18. Defendant Hilcorp Energy Company is the operator and developer of all of the unconventional, deep well, oil and gas development that utilizes the combination of horizontal drilling and hydraulic fracturing in the entirety of Pulaski Township at present.

19. These unconventional oil and gas drilling activities are currently permitted in Pulaski Township as a Conditional Use in R1 Residential, Institutional, and Agricultural Districts under Section 307.22(5) Mining and Mineral Extractions.

20. However, despite the township's approval, HILCORP's activities have so drastically changed the sleepy countryside that they have rendered surrounding properties nearly uninhabitable and completely unenjoyable due to excessive noise, odors, blinding light, tremors, and twenty-four hour operation of heavy industrial equipment. Moreover, the chaos has brought its residents to the brink of severe emotional distress and mental breakdown, in constant fear of: fires, chemical contamination, water poisoning, flooding, earthquakes and explosions.

21. This Pulaski Township Zoning Ordinance that permits the heavy industrial use of unconventional oil and gas development in residential and agricultural areas with little to non-existent local standards and regulations is currently being challenged under a zoning ordinance substantive validity challenge, under the municipalities planning code, before the Pulaski Township Zoning Hearing Board.

22. Plaintiffs' property and home is only 560 feet from the unconventional oil and gas development known as the Chrastina well, measured from the Plaintiff's front door to the well-bore for the first well.  Additional well are expected soon.

23. Plaintiffs front door is only 140 feet from the access road that Hilcorp made leading to the Chrastina well-pad that the large trucks and construction equipment travel upon.

24. Another Hilcorp unconventional well development, the Whiting well, along with an industrial and intensive compressor station, is on the other side of Plaintiffs' home across the river approximately ¾ of a mile away.

25. Development of the Chrastina well very close to the Plaintiffs' home began with Hilcorp's running of massive electrical cords across the fields and through the woods.

26. Next came the loud booms and explosions of seismic testing and thumper trucks

27. The Hilcorp hired workers partaking of these initial construction activities, in an unsanitary and illegal fashion, repeatedly defecated and spread toilet paper through the woods around Mr. Dubrasky's home, as personally observed by Ivan.

28. Next massive Hilcorp bulldozers, rollers and trucks appeared on the property creating a gravel road 140 feet from the Plaintiffs front door for truck and construction equipment to travel to the development.  Accompanying this development activity were large and excessively loud industrial trucks, with loud reverse gear alerts and excessively bright lights, being driven in close proximity to the Plaintiffs' home all day and night long, disturbing the sleep of the Plaintiffs and causing emotional distress and disturbance. *See Exhibit A.*

29. Next the site of the well-development was cleared creating excessive dust and dirt near and on the Plaintiff's home. *See Exhibit A.*

7

30. Hilcorp Energy also removed significant trees, plants and vegetation visible to the Plaintiffs and integral to the agricultural character of the community. *See Exhibit A*.

31. The Hilcorp trucks with loud back-up beepers and construction activity created excessive noise and disturbance to Plaintiffs, being only 140 feet from their home.

32. These Hilcorp construction activities occurred 24 hours per day and 7 days per week.

33. The construction activity and trucks caused damage to Plaintiffs' yard by backing up onto it and creating huge ruts and divots.

34. Following the trucks, next came the Hilcorp heavy industrial vertical drilling related equipment, including loud power generators, causing greater and excessive light, noise, lots of dust and damage to the area. The vertical drilling rig was approximately 200 feet tall and also operated 24 hours per day and 7 days per week. *See Exhibit B*.

35. With the intensive lights, the area resembled a large football field and stadium during an evening game that refused to stop, dropped in a once quiet rural agricultural community.

36. Mobile homes and trailers were brought in by Hilcorp within 500 feet of Ivan's home for construction workers to live on site and remain today. There are approximately 8 trailers within 500 feet of Ivan's home where many construction workers temporarily reside. *See Exhibit B*.

37. After another round of massive Hilcorp trucks came into the Chrastina Well site and removed the vertical drilling related equipment, more Hilcorp trucks returned to set up the far larger horizontal drilling rig and related equipment.

8

38. Horizontal drilling then took place, with the massive horizontal drilling rig and corresponding generators, machinery, workers and heavy industrial equipment. *See Exhibit C.*

39. The horizontal drilling process produced extremely and excessively bright lights and excessively loud noises occurring all day and all night long (24 hours per day).

40. The Plaintiffs' were often awoken at 3:00 am and 4:00 am by loud banging and clanging noises and never ceasing light and noise pollution emanating from the unconventional well development.

41. The loud and bright horizontal drilling even occurred unabated all day and evening on Good Friday and all day and evening on Easter Sunday.

42. Further, like the compressor station at the nearby Whiting well, the huge, intense, bright flames and loud noise of the flaring process has begun at the Chrastina well near Plaintiffs' home. *See Exhibit D, photo of Hilcorp flaring from another unconventional development in or about Pulaski Township, not the Chrastina Well.*

43. Flaring has occurred every day from November 2014 to the present with enough noise that even from ¾ of a mile away it can be heard clearly at the Whiting well. Plaintiffs are very concerned that the industrial and intense flaring process at the Chrastina well that is only 500 feet from his home will continue for that long duration. The Whiting well unconventional drilling development has continued unabated for approximately 2.5 years.

44. Mr. Dubrasky, under oath describing how the unconventional well development has affected his use and enjoyment of his property at the hearing on the substantive validity of the zoning ordinances, responded by stating that:

When I'm trying to sleep at night I hear it.  I hear it first thing in the morning when I wake up.  I hear it every time I go outside.  You just can't get away from it.  You hear the banging pipes and banging metal, back-up beepers, and that's even with the doors and windows closed.  *Transcript of Hearing, Volume II, page 224.*

45.  Mr. and Mrs. Dubrasky believe the unconventional activity so close to their home has reduced their property value, they are very concerned about pollution, concerned about maintaining home-owners insurance, and concerned about well accidents.

46.  Plaintiffs are also especially concerned because Hilcorp is the developer and they have been cited by the D.E.P. for contaminating wells in Pulaski Township, including contamination caused by the nearby Whiting well.

47.  A neighboring property owner undertook extensive research into Environmental violations by Hilcorp energy, and in the course of her research she discovered and confirmed at least 18 environmental violations by Hilcorp energy occurring in Pulaski Township of the D.E.P.'s applicable environmental rules and regulations, including contamination of nearby Deer Creek.

48.  Very close to Plaintiffs' home, the Pennsylvania Department for Environmental Protection has found HILCORP responsible for two confirmed water/land contamination's at the ESCGP-1 #ESX12-073-0010—Pulaski-Whiting Well Site. *Exhibit E:* http://www.ncnewsonline.com/opinion/article_c827604a-ca71-518d-be7f-ed2368a8466b.html ; *and* http://www.pabulletin.com/secure/data/vol42/42-16/737c.html

49.  Although offered the opportunity to sign a gas and oil lease, Plaintiffs did not sign an oil and gas lease with Hilcorp or any other oil and gas developer for their real property mineral

and gas rights because he was concerned about his water well and the quiet enjoyment of his home.

50. Further, since drilling activities have begun, strong, noxious odors have been noticed on Plaintiffs property emanating from the well-pad drilling activity

51. Other unconventional drilling development activities reasonably expected near the Plaintiffs' home very soon include, but are not limited to, more noxious odors, more heavy truck traffic, huge open flames from well burn-off, drilling workers continuing to live on-site in violation of the ordinance, and potential harmful emissions all associated with these industrial sites approved by Pulaski and undertaken by Defendants.

52. The oil and gas drilling process occurs in an endless cycle of phases extended over a long period of time with drillers leaving and then returning several times over a period of years after accessing several different shale ventures at different geological depths.

53. A particular unconventional well can be "re-fracked", over 12 wells wells can be drilled on exiting well-sites, and different geological formation can be accessed by drilling in the same location at different times.

54. Moreover, extensive new pipelines will eventually be necessitated and introduced in these residential and agricultural areas, further frustrating the stated purpose of those districts, destroying the comprehensive zoning plan, to the extent one now practically exists, and causing harm to Plaintiff's use and enjoyment of their property.

55. Plaintiffs reasonably fear that in the industrialization of Pulaski Township, undertaken by Hilcorp, that they will lose the ability to obtain property casualty insurance on

their real property, lose the ability to refinance their home, and lose the ability to sell their home, even with a drastically reduced fair market value.

56.  Plaintiffs' home and overall quality of life have all been negatively impacted and Plaintiffs are no longer able to enjoy their lives and use and enjoy their property and home in the same manner they previously and historically have enjoyed prior to the unconventional oil and gas development activity.

57.  Plaintiffs also fear the danger of toxic contamination and the likelihood that the appraised value of their home will be drastically reduced thereby wiping out their equity and retirement funds.

58.  Also causing reasonable fear, emotional distress and uncertainty is the fact that Hilcorp is linked with at least two recent confirmed earthquakes in neighboring Poland, Ohio. The Ohio Department of Natural Resources has recently released information that the total number of earthquakes could be as high as sixty.  This seismic activity, attributable to HILCORP, is less than 15 miles away from Plaintiffs' home. *Exhibit F* : http://www.vindy.com/news/2014/mar/10/breaking-news-odnr-halts-shale-drilling-lowellvill/ *Exhibit* : http://wytv.com/2014/09/03/professor-quake-and-well-are-linked/; *Exhibit D:* http://www.vindy.com/news/2014/oct/15/study-links-hundreds-of-quakes-in-easter/

## JURISDICTION AND VENUE

59. Jurisdiction and venue are proper in the Court of Common Pleas of Lawrence County, Pennsylvania, because the Defendant has a registered office and regularly conducts business in Lawrence County, Pennsylvania, and the harms complained of occurred in the State of Pennsylvania

## COUNT I - PRIVATE NUISANCE

60. The Plaintiffs hereby incorporate by reference all prior paragraphs of this complaint as though fully set forth herein.

61. A Private Nuisance is conduct of the defendant that is a legal cause of an invasion of another's interest in the private use and enjoyment of land, where the invasion is either: (1) intentional and unreasonable or (2) unintentional and otherwise actionable under the rules governing liability for negligent or reckless conduct, or abnormally dangerous conditions or activities. Furthermore, a private nuisance is defined as a non-trespassory invasion of another's interest in the private use and enjoyment of land. Karpiak v. Russo, 450 Pa. Super. 471, 676 A.2d 270 (1996).

62. The term "nuisance" signifies such a use of property or conduct as, irrespective of actual trespass against others or of malicious or actual criminal intent, transgresses the just restriction upon use or conduct which the proximity of other persons or property in civilized communities imposes upon what would otherwise be rightful freedom. Kramer v. Pittsburgh Coal Co., 341 Pa. 379, 19 A.2d 362 (1941). 36 P.L.E. NUISANCE § 1

13

63.  Unconventional, deep-well, oil and gas development that utilizes horizontal drilling and hydraulic fracturing, a heavy industrial use, is presently occurring within 500 feet from the Plaintiffs' residence, in an agricultural zone, and throughout Pulaski Township as a result of the actions and inactions of the defendants.

64.  During its unconventional, deep-well, oil and gas development, Hilcorp uses heavy machinery, drilling rigs, chemicals, trucks, cranes, and other heavy equipment which make excessively loud explosions, grinding, rumbling, clanking, and buzzing noises, excessive light and dust pollution, produce noxious odors, and are clearly audible both outside and inside plaintiffs' residence.  These activities as related to plaintiffs are described above.

65.  HILCORP's unconventional, deep-well, oil and gas development twenty-four hours per day and night with excessively bright lights, excessive noise and dust, and possible dangerous toxic pollution.

66.  The excessive noise of HILCORP's drilling activity is so loud, incessant, and intolerable that plaintiffs are disturbed and harassed day and night, and are absolutely unable to pursue their normal activities in peace and quiet during the day or sleep comfortably and uninterruptedly through the night.

67.  The constant loud noise and bright lights from HILCORP's drilling activity has adversely affected the physical and mental health of Plaintiffs.

68.  Defendant, by its acts and/or omissions, including those of its officers, agents, contractors, and/or employees, has caused, created and maintained unreasonable, private, temporary, continuing and abatable invasions of plaintiffs' use and enjoyment of their private property.

69. Defendant, by its acts and/or omissions, including those of its officers, agents, contractors, and/or employees, has negligently, recklessly, knowingly, intentionally, or otherwise frequently, repeatedly, and unreasonably impaired the Plaintiffs' private use and enjoyment of their property by conducting unconventional, deep-well, oil and gas development, a heavy industrial property use that will have a long term negative environmental impact, in residential and agricultural zones, in violation of the Pennsylvania and United States Constitutions.

70. Defendant, by its acts and/or omissions, including those of its officers, agents, contractors, and/or employees, has failed to take known reasonable, practicable, and necessary steps to warn of, abate, minimize, or eliminate such conditions, like restricting the unconventional, deep-well, oil and gas development uses to a greater extent, limiting such activity to industrial zones only, limiting hours of operation, or implementing more restrictive conditions that protect the property values, property enjoyment, and environmental quality of the locale.

71. As a result, Defendant is liable for all of the damages and injuries to the Plaintiffs caused by its acts and/or omissions and natural gas exploration activities, and responsible to abate such nuisance.

72. Defendant knew, or should have known, that their conduct described herein, had and has a substantial likelihood of causing significant injury to Plaintiffs' property rights; and, plaintiffs' quiet use and enjoyment of their property.

73. As a direct and proximate result of Defendants' acts, breach of duty, and/or omissions the Plaintiffs have suffered significant impairment to their use and enjoyment of property, including, but not limited to property damage, loss of property value, discomfort,

annoyance, offense to the senses, angst, anxiety, distress, disgust, embarrassment, fear, concern, difficulty sleeping, illness, health concerns, deprivation of the ability to further develop the property, destruction of the serenity of the property, and concern for water and air quality, for which they are entitled to compensation.

74. Dwellers in a residential locality will generally be protected from immediate encroachment from business enterprises interfering with quiet and cleanliness. Nesbit v. Riesenman, 298 Pa. 475, 148 A. 695 (1930).

75. An equity action may be pursued to seek injunctive relief against existing or threatened nuisances even if the land, structures or activities that caused the nuisance had been authorized under the zoning procedure, i.e., a land use can have proper zoning approval under an ordinance, but because of the manner of its operation the use may still constitute a nuisance, subject to an equitable remedy. Chase v. Eldred Borough, 902 A.2d 992, 998 (Pa. Commw. Ct.2006); *See also,* Klein v. Shadyside Health, Education and Research Corp., 643 A.2d 1120 (Pa. Cmwlth. 1994)(residents who had lived near Shadyside Hospital in Pittsburgh successfully challenged the construction, installation and enlargement of a helicopter facility.); Walker v. Delaware Trust Co., 171 A. 458, 459 (1934) (Acts of municipal officers who, under zoning legislation, permitted the use of property for what may or may not be a nuisance did not strip the common pleas court of equitable jurisdiction to determine whether a nuisance in fact existed and should have been restrained).

76. A fair test in determining whether a *business lawful in itself* constitutes a nuisance is the reasonableness or unreasonableness of conducting it in the particular locality and in the manner and under the circumstances involved. Guarina v. Bogart, 407 Pa. 307, 180 A.2d 557 (1962).

77.  In this matter, conducting unconventional, deep-well, oil and gas development, with inadequate local restrictions and the accompanying industrial, construction and testing activities, in residential and agricultural areas is unreasonable in those localities.

78.  Where a nuisance, or an injury resulting from a nuisance, is actually threatened and practically certain, and not merely probable, it will be enjoined.  Baker v. Moore, 311 Pa. 38, 166 A. 362 (1933).  In this connection, where it is generally known that acts are injurious, experimentation is not required to determine whether the result will have an evil effect.  Nesbit v. Riesenman, 298 Pa. 475, 148 A. 695 (1930).

79.  Similarly, it is no defense to such an action that the business sought to be restrained is a lawful one, or is important or that it furnishes employment to a large number of persons.  McKees Rocks v. Rennekamp Supply Co., 344 Pa. 443, 25 A.2d 710 (1942).

80.  Where a nuisance exists, equity may enjoin it even though there has been a compliance with zoning ordinances.  Mazeika v. American Oil Co., 383 Pa. 191, 118 A.2d 142 (1955).  36 P.L.E. NUISANCE § 25.  Furthermore, the fact that the approval of the zoning authorities has been given to the establishment of the operation or instrumentality complained of is no defense to an action to enjoin it as a nuisance.  Reid v. Brodsky, 397 Pa. 463, 156 A.2d 334 (1959).  36 P.L.E. NUISANCE § 25.

81.  Consequential, as well as direct, damages may be recovered in an action for a nuisance.  Kohr v. Weber, 402 Pa. 63, 166 A.2d 871 (1960).

82.  In a proper case, punitive damages may be allowed for injuries sustained as a result of the maintenance of a nuisance.  McElroy v. Filby, 83 Pa. Super. 47 (1924).

83. Defendant, by its acts and/or omissions including those of their officers, agents, contractors, and/or employees have negligently, recklessly, knowingly, intentionally, or otherwise frequently, repeatedly, and unreasonably impaired the Plaintiffs' private use and enjoyment of their property by improperly engaging in unconventional, deep-well, oil and gas development activities and causing the following, but not limited to the following conditions:

a. Wells and developments with integrity issues that leak natural gas and other toxic and/or radioactive substances into the air and ground on and around the Plaintiffs' property and the surrounding areas;

b. Discharges of industrial waste into local water and land resources;

c. Discharges of industrial waste onto their property;

d. Damages to land;

e. Excessive noise;

f. Excessive truck and heavy machinery use and traffic;

g. Excessive lights;

h. Excessive odors;

i. Frequent harassing behavior; and

j. A hostile and harassing environment.

84. As a direct and proximate result of Defendant's acts and/or omissions in their unconventional, deep-well, oil and gas development, the Plaintiffs have suffered significant impairment to their use and enjoyment of property, including, but not limited to property

damage, substantial discomfort, annoyance, offense to the senses, angst, anxiety, distress, disgust, embarrassment, fear, concern, difficulty sleeping, health concerns, deprivation of the ability to further develop the property, destruction of the serenity of the property, and concern for water and air quality, for which they are entitled to compensation.

85. Defendant, including its officers, contractors, agents, and/or employees knew or was substantially certain that its unconventional, deep-well, oil and gas development activities would create and maintain such a continuing nuisance to Plaintiffs.

86. Each of the aforesaid injurious conditions created by Defendant are reasonably and practicably abatable through better operation, procedures, management, repair, technology, oversight, maintenance, or otherwise.

87. However, Defendant has failed to take known reasonable, practicable, and necessary steps to warn of, abate, minimize, or eliminate such conditions.

88. Defendant's use of property and the impairment to Plaintiffs' use and enjoyment of their property has been and is unreasonable and abnormally dangerous.

89. As a result, Defendant is liable for all of the damages and injuries to the Plaintiffs caused by their acts and/or omissions and unconventional, deep-well, oil and gas development activities, and to abate such nuisance.

90. Defendant knew, or should have known, that its conduct described herein, including, but not limited to the knowing release of toxic and dangerous emissions, had and has a substantial likelihood of causing significant injury to Plaintiffs' property, property rights, and quiet use and enjoyment of their property.

91. Further, some or all of the acts and/or omissions of the Defendant described herein, including those of their officers, agents, contractors, and/or employees, were intentional and/or grossly, recklessly, and/or wantonly negligent, and were done with utter disregard for the Plaintiffs rights, property, safety, and well-being, and therefore, Plaintiffs are entitled to an award of punitive damages.

92. Plaintiffs' injuries are irreparable and Plaintiffs have no other adequate remedy at law, as the continuation of the unconventional, deep-well, oil and gas development on a daily basis creates significant, permanent, and material degradation of the environmental quality of the Plaintiffs' residential property and their real property values. A stay will redress the injuries that the Plaintiffs currently suffer.

**WHEREFORE**, the Plaintiffs each hereby seek all damages allowed under the laws of the Commonwealth of Pennsylvania from the Defendant, jointly and severally, in an amount in excess of $50,000.00, plus costs of suit, which sum is in excess of the amount requiring compulsory arbitration under the applicable statutes of the Commonwealth of Pennsylvania and the local rules of this Court to compensate Plaintiffs for the interference of their right to the use and quiet enjoyment of their respective properties; for punitive damages to be determined at trial in an amount set by law or the trier of fact sufficient to punish Defendant, for the above-described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendant, and for such other and further relief as the Court may deem just and appropriate. Further, Plaintiffs request that the court order a stay of the unconventional, deep-well, oil and gas development, drilling, seismic, exploratory, water-contaminating, and/or otherwise harmful or potentially harmful, activity on the part of HILCORP to abate this continuing nuisance.

## COUNT II – NEGLIGENCE AND/OR RECKLESSNESS

93.  Plaintiffs repeat and re-allege the allegations of the above and foregoing paragraphs of this Complaint, and hereby incorporate by reference all prior paragraphs of this complaint as though fully set forth herein.

94.  Defendant, at all times relevant herein, owed the following, but not limited to the following, duties of reasonable care to Plaintiffs:

    a.  To reasonably and responsibly own, operate, control, and maintain their unconventional, deep-well, oil and gas developments so as not to injure Plaintiffs or otherwise impair their use and enjoyment of property;

    b.  To take all measures reasonably necessary to inform and protect the Plaintiffs from dangerous and/or unreasonable well activities;

    c.  To warn of the conditions and harms that their wells might, would, or do cause Plaintiffs;

    d.  To properly manage and dispose of residual waste from their activities;

    e.  To properly manage their wells;

    f.  To mitigate noise, light and dust;

    g.  To mitigate excessive odors;

    h.  To not cause damage to land; and

21

i. To prevent releases of hazardous, toxic, and/or radioactive substances into the air and water allowing methane, natural gas, and other toxins to infiltrate their land and groundwater.

95. Defendant, including its officers, agents, contractors, and/or employees, has repeatedly breached these duties of care to Plaintiffs, thereby directly and proximately causing significant damages to Plaintiffs for which they are entitled to compensation.

96. Defendant including its officers, agents, and/or employees, should have taken reasonable precautions and measures to prevent and/or mitigate the problems caused by their activities.

97. As a direct and proximate result of Defendant's acts and omissions stated herein, Plaintiffs have suffered damages for which they are entitled to compensation.

98. Defendant including its officers, agents, and/or employees, knew or in the exercise of reasonable care should have known, that such problems caused by Defendant's negligent and reckless conduct, and the resultant harm to Plaintiffs and their property were foreseeable consequences it's acts and/or omissions in the manner in which they engaged in their gas drilling and production activities.

99. Defendant's acts and omissions, including those of its officers, agents, contractors, and/or employees were the direct and proximate cause of the damages to Plaintiffs alleged herein.

100. Defendant knew, or should have known, that its conduct described herein, including, but not limited to the knowing release of toxic and dangerous emissions, had and has a

substantial likelihood of causing significant injury to Plaintiffs; Plaintiffs' property; and Plaintiffs' property rights.

101.  Further, some or all of the acts and/or omissions of Defendant described herein, including those of its officers, agents, contractors, and/or employees, were intentional and/or grossly, recklessly, and/or wantonly negligent, and were done with utter disregard for the Plaintiffs' rights, property, safety, and well-being, and therefore, Plaintiffs are entitled to an award of punitive damages.

**WHEREFORE,** Plaintiffs each hereby seek all damages allowed under the laws of the Commonwealth of Pennsylvania from the Defendant, in an amount in excess of $50,000.00, plus costs of suit, which sum is in excess of the amount requiring compulsory arbitration under the applicable statutes of the Commonwealth of Pennsylvania and the local rules of this Court to compensate Plaintiffs for all injuries caused by Defendant's negligent and reckless acts and omissions; for punitive damages to be determined at trial in an amount set by law or the trier of fact sufficient to punish Defendant, for the above-described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendant, and for such other and further relief as the Court may deem just and appropriate.

## COUNT 3.  STRICT LIABILITY

102. Plaintiffs repeat and re-allege the allegations of the above and foregoing paragraphs of this Complaint, and hereby incorporate by reference all prior paragraphs of this complaint as though fully set forth herein.

103.  One who carries on an abnormally dangerous activity is subject to strict liability for harm to the person, land, or chattels of another resulting from such activity, even though he has exercised the utmost care to prevent such harm. Liability is limited to the kind of harm, the risk of which makes the activity abnormally dangerous.

104.  The liability arises out of the abnormal danger of the activity itself, and the risk that it creates, of harm to those in the vicinity.  It is founded upon a policy of the law that imposes upon anyone who for his own purposes creates an abnormal risk of harm to his neighbors, the responsibility of relieving against that harm when it does in fact occur. The defendant's enterprise, in other words, is required to pay its way by compensating for the harm it causes, because of its special, abnormal and dangerous character." Restatement (Second) of Torts, Section 519(1) cmt. d.

105.  Determination of whether an activity is abnormally dangerous for purposes of imposing strict liability is a question of law and involves a consideration of whether the activity involves a high degree of risk of harm to the person or property of another, whether the harm is likely to be great, whether reasonable care would eliminate the risk, whether the activity is a matter of common usage, whether it is appropriate to its location, and whether a balancing of social interests requires the actor pay for the consequences of such activity. Several, but not all, of the factors should be present in a particular instance to justify strict liability.

106. In what might be called the "traditional" strict liability cases, in which the defendant has engaged in an ultra-hazardous activity that cannot be made safe, the defendant is held to be an "insurer" as to injuries that the activity has caused. The point is not that there is anything wrong with the activity, but rather that because of its dangerousness the defendant may be held strictly liable for the injuries the activity caused. Dambacher v. Mallis, 485 A.2d 408, 424 (Pa. Super. Ct.1984); *See also*, See Prosser, supra at 505-16; Restatement (Second) of Torts §§ 519, 520 (1965).

107. In other words, a defendant must be cautious because when it comes to these activities, since it will be deemed to have acted at his or her peril if injuries result, no matter how much care he or she used when engaging in the abnormally dangerous activity.

108. In the Plaintiffs' rural, residential community, the Defendant engaged in an abnormally dangerous activity by engaging in unconventional, deep-well, oil and gas development, drilling, seismic, exploratory, water-contaminating, and/or otherwise harmful or potentially harmful, activity and causing the following, but not limited to the following conditions:

    a. Wells with integrity issues that leak natural gas and other toxic and/or radioactive substances into the air and ground on and around the Plaintiffs' property and the surrounding areas;

    b. Discharges of industrial waste into local water and land resources;

    c. Discharges of industrial waste onto their property;

    d. Damages to land;

e. Excessive noise;

f. Excessive truck and heavy machinery use and traffic;

g. Excessive lights;

h. Excessive odors;

i. Frequent harassing behavior; and

j. A hostile and harassing environment.

109.  These activities have so drastically changed the Plaintiffs' locale that they have rendered properties uninhabitable, due to excessive noise, odors, blinding light, tremors, and twenty-four hour operation of heavy equipment, and brought its residents to the brink of mental breakdown, in constant fear of: fires, chemical contamination, water poisoning, flooding, earthquakes and explosions.

110.  Defendant, including its officers, agents, and/or employees, knew or in the exercise of reasonable care should have known, the resultant harm to Plaintiffs and their property were foreseeable consequences it's acts and/or omissions in the manner in which they engaged in their gas drilling and production activities.

111.  Furthermore, Defendant knew, or should have known, that its conduct described herein, including, but not limited to the knowing release of toxic and dangerous emissions, had and has a substantial likelihood of causing significant injury to Plaintiffs; Plaintiffs' property; and Plaintiffs' property rights.

112.  The term "unreasonably dangerous" as used in the Restatement formulation is a term of art invoked when strict liability is appropriate.  It is a judicial function to decide whether,

under plaintiff's averment of the facts, recovery would be justified; and only after this judicial determination is made is the cause submitted to the jury to determine whether the facts of the case support the averments of the complaint. Azzarello v. Black Bros. Co., 391 A.2d 1020, 1026, (Pa.1978).

**WHEREFORE**, Plaintiffs each hereby seek a determination that Defendants are strictly liable for all damages allowed under the laws of the Commonwealth of Pennsylvania from the Defendant, in an amount in excess of $50,000.00, plus costs of suit, which sum is in excess of the amount requiring compulsory arbitration under the applicable statutes of the Commonwealth of Pennsylvania and the local rules of this Court to compensate Plaintiffs for all injuries caused by Defendant's acts and omissions; for punitive damages to be determined at trial in an amount set by law or the trier of fact sufficient to punish Defendant, for the above-described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendant, and for such other and further relief as the Court may deem just and appropriate.

## COUNT 4. INJUNCTIVE RELIEF

113. The Plaintiffs hereby incorporate by reference all prior paragraphs of this complaint as though fully set forth herein.

114. Defendants continue to conduct unconventional, deep-well, oil and gas development that utilizes horizontal drilling and hydraulic fracturing, a heavy industrial property use that will have a long term negative environmental impact, in addition to its short term personal and property impacts on Plaintiffs in residential and agricultural zones.

115.  Defendant's actions and inactions described above clearly demonstrate an intentional, reckless and/or negligent failure to balance the personal, health and property interests of present and future beneficiaries with their interest in aggressively promoting and conducting unconventional, deep-well, oil and gas development, hydraulic fracturing and gas extraction in Plaintiffs' back-yard.

116.  Plaintiffs are interested parties and property owners aggrieved by the recent actions of defendants and have legal standing to challenge the actions and inactions of Defendant.

117.  The Plaintiffs have suffered and continue to suffer injury—an invasion of a legally protected interest that is their property values, property enjoyment and use, and personal physical and mental health.

118.  Plaintiffs current and long-term real property values have likely been significantly reduced as their residential area is now an arguably a heavy industrial area.

119.  As a direct and proximate result of defendants' acts, breach of duty, and/or omissions the Plaintiffs have suffered significant impairment to their use and enjoyment of property, including, but not limited to property damage, loss of property value, substantial discomfort, annoyance, offense to the senses, angst, anxiety, distress, disgust, embarrassment, fear, concern, difficulty sleeping, health concerns, deprivation of the ability to further develop the property, destruction of the serenity of the property, and concern for water and air quality, for which they are entitled to compensation.

120.  Plaintiffs' injuries are irreparable and Plaintiffs have no other adequate remedy at law, as the continuation of the hydraulic fracturing activity on a daily basis creates significant, permanent, and material degradation of the environmental quality of the Plaintiffs' residential

property and their real property values.  A stay will redress the injuries that the Plaintiffs currently suffer.

**WHEREFORE,** Plaintiffs request that the court order a stay of the unconventional, deep-well, oil and gas development utilizing horizontal drilling and hydraulic fracturing, drilling, seismic, exploratory, water-contaminating, and/or otherwise harmful or potentially harmful, activity on the part of HILCORP to abate this continuing Nuisance.  Plaintiff further requests that judgment be entered against the Defendant and for plaintiffs in an amount in excess of $50,000.00, exclusive of interest and costs.  ; for punitive damages to be determined at trial in an amount set by law or the trier of fact sufficient to punish Defendant, for the above-described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendant, and for such other and further relief as the Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Respectfully Submitted,

/s:/

Angelo A. Papa, Esquire
318 Highland Avenue
New Castle, PA 16101
Tel: 724-654-8111
Fax: 724-654-6766

Date:  April 20, 2015

29

## VERIFICATION

I verify that the statements made in the foregoing documents are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

_Jean Dubrosky_

_4/20/15_
Date









Hilcorp to 'remediate' soap spill - New Castle News: Opinion            http://www.ncnewsonline.com/opinion/article_c827604a-ca71-518d-b...

About Us  Contact Us  e-Edition  Reader Care  Text Center  Subscriber Services

| Home | News | Sports | Classifieds | Community | Opinion | Obituaries | Online Features | Shopping |

Home    Opinion

# Hilcorp to 'remediate' soap spill

 

New Castle, PA
**54°F**
CLICK FOR MORE WEATHER

Advanced Search
Search this site ...

Story
Posted: Tuesday, July 15, 2014 8:50 am                                    Font Size:

**By Staff**
New Castle News

Hilcorp Energy Co. has notified state officials it will "remediate" a soap spill in Pulaski Township.

The company, which has multiple unconventional gas wells in the county, submitted a Notice of Intent to Remediate to the Pennsylvania Department of Environmental Protection for its wellpad site at 3242 Garner Road, Pulaski Township.

A legal ad was published July 3 in the New Castle News.

The notice states the site and surface water at the site, which is known as the Pulaski-Whiting gas well, has been contaminated with soap.

The company has proposed remediation measures which "may consist of monitored natural attenuation or other insitu remediation measures." The public notice states the proposed future use of the property will be "for residential use."

Gary Clark of the DEP said the department has inspected the incident and sent a notice of violation to Hilcorp for the discharge.

However, he said, "We don't know the volume or extent of the contamination yet."

He said that should be addressed as Hilcorp goes through the Act 2 process and submits the required reports. Public notice of such spills is required by Act 2, the Land Recycling and Environmental Remediation Standards Act, according to the DEP.

Clark said it is up the oil and gas department to "determine where this falls in terms of enforcement priority." He said the oil and gas department has been in contact with Hilcorp, which indicated around mid-June that a complete Notice to Remediate is forthcoming but the department has not yet received it, he said.



0 comments                                                               ✦ livefyre❋

Sign in                                                                  1 person listening

+ Follow                                                      Share    Post comment as...

Newest | Oldest

## Weekly Circulars

Featured | Home & Garden | Electronics | Fashion | Groceries | Sporting Goods

   



PRESTON
www.PrestonAuto.com
YOU COME FIRST!



FIND & SAVE
Coupon Deals
Newspaper Ads

ADVERTISERS
Beer 4 Less / Cheerios 4 Less
Butler Tire, Inc.
Castle Realty
Howard Hanna Real Estate
New Castle Playhouse / Pinocchio
New Castle Shop 'N Save
Northwood Realty Services
Phil Fitts Ford / Lincoln
Preston Chevrolet / Buick / GMC
Preston Chrysler / Dodge / Jeep / Ram
Preston Honda

The Marquee
You can advertise here call 724-654-6651 ext.658

## Crunch



The 2014 football season is heating up, and now is your chance to get in on the action with the other members of the Local High School Football

Enter the Crunch Site

## AP College Football

The 2014 AP college football

Hilcorp to 'remediate' soap spill - New Castle News: Opinion        http://www.ncnewsonline.com/opinion/article_c827604a-ca71-518d-b...






More Weekly Circulars...



season is heating up, and now is your chance to get in on the action with the other members of the College Footbal No drafts, rosters or trades. Simply pick the winners of each game and earn points. Play to win great prizes and a chance to reign as the champ!

Sign Up Now!

### New Castle News Events
(http://ncnewsonline.com/events)

**SAT 25** **Coat Drive**
Unity Baptist Chur...| Harlansburg, PA
(http://ncnewsonline.com/events#
/details/COAT-DRIVE/1014919
/2014-10-25T09)

**MON 20** **A Taste of the Town**
New Castle, PA
(http://ncnewsonline.com/events#
/details/A-TASTE-OF-THE-
TOWN/917140/2014-10-20T17)



### Football Experts Club

The 2014 college football season is heating up, and now is your chance to get in on the action with the other members of the College Football Experts Club game. No drafts, rosters or trades. Simply pick the winners of each game and earn points. Play to win great prizes and a chance to reign as the champ!

Sign Up Now!

Print

## New Castle News Videos

Posted in Opinion on Tuesday, July 15, 2014 8:50 am.

### Similar Stories

- Gary Church: On way to clean garage, I veered off to Memory Lane
- Josh Drexpling: With no internet, I've never felt more disconnected
- Gary Church: My new Pen name? I hope it's not Med
- Tim Kolodziej: Eight secrets to becoming an overnight success
- The Couch Potato: These new commercials are driving me nuts

### Most Read

- Teen reports rape while walking to school
- Jameson preparing for Ebola virus
- THE LATEST: City man struck by bus
- Man accused of trying to drown woman in sink
- Man arrested for gunfire in house



### SmugMug Photo Galleries

To view or purchase photos,

Youngstown News, BREAKING NEWS | ODNR halts shale drilling i...    http://www.vindy.com/news/2014/mar/10/breaking-news-odnr-halts-s...

Monday, October 20th, 2014        JOBS    WHEELS    HOMES    CLASSIFIEDS    Powered by Google

**Vindy.com**
The Valley's Homepage



News ˅ | Opinion ˄ | Sports ˄ | Entertainment ˄ | Classifieds ˄ | Records ˄ | Discussions ˄ | Community ˄ | Contact ˄ | Neighbors ˄    ➤Marketplace

Digital Edition  Local  Weather  National & World  Business & Tech  Politics  Fracking  Food  Society  Education  Health & Home  Religion  Travel

| Login ˄ | Digital Edition ˄ | Print Edition ˄ |

« News Home

# BREAKING NEWS | ODNR halts shale drilling in Poland after earthquakes

17 Comments  Print    Email

Recommend {235}  Tweet {102}  8 +1 2

**EXHIBIT F**

Published: Mon, March 10, 2014 @ 3:19 p.m.

POLAND — The Ohio Department of Natural Resources has ordered Hilcorp to halt all operations in Poland Township after two earthquakes shook the area today.

The first occurred at 2:26 a.m. at 40.017 N, 80.537 W at a depth of 1.2 miles in Lowellville, according to the U.S. Geological Survey. USGS initially recorded that quake at a magnitude of 2.8, but later updated it to a 3.0 magnitude.

The epicenter was directly below property owned by Republic Services' Carbon Limestone Landfill, where Hilcorp Energy Co. has one well actively producing and a number of others being drilled.

The second occurred at 11:44 a.m., to the southeast of the first epicenter in Lowellville, registering at a 2.6 magnitude.

There are no injection wells in the area.

Both sites are near laterals extending from hydraulic fracturing wells.

Check Vindy.com later for updates

### Other stories of interest

- Oakhill prosecutors may use 700 hours of secretly recorded conversations
- Ohio grand jury indicts Illinois man on murder charge
- Indiana man's confession leads to 7 bodies
- State: Ebola monitoring continues, contacts drop

## Comments

 rickking123(304 comments) posted 7 months, 1 week ago

Most importantly we need to ask if Oak Hill was evacuated successfully.

Suggest removal: | |

GeorgeinYoungstown(76 comments) posted 7 months, 1 week ago

This is a de facto admission that fracking causes earthquakes. We've known that injection wells do, but now we know fracking does as well.

- Advertisement -



Most Commented ˄    Most Emailed ˄    Popular ˄

Hatefest toward Obama reflects more on haters    (88)
than on president

Youngstown ranks as sixth-highest poverty-    (18)
stricken city in nation

Austintown schools offering nutritious options    (16)

Boardman teachers get pay raise as renewal    (13)
levy looms

UPDATE | Bomb squad at Betras law office in    (12)
Canfield Township

**Vindy JOBS**

Social Service Designee Due to

Confidential, Youngstown, OH

Browse | Submit a Resume | Post a Job

- Advertisement -

**Salem & Columbiana**
CHRYSLER JEEP DODGE RAM

Columbiana Chrysler    Salem Chrysler
Jeep Dodge    Jeep Dodge
100 Commerce Circle    400 Legacy Lane
Columbiana, OH 44408    Salem, OH 44460
Sales:877-855-9704    Sales:888-603-6235



# Professor: Quake and well are linked

**By Matt Horn**
Published: September 3, 2014, 11:01 pm  |  Updated: September 3, 2014, 11:06 pm



YOUNGSTOWN, Ohio (WYTV) – The investigation into Sunday's earthquake near Niles is still ongoing, but one group says it is already clear what is behind the quake.

Youngstown State University geology professor Dr. Ray Beiersdorfer has been very vocal against fracking in the Valley and says fracking and earthquakes have direct cause and effect on each other. He said he believes Sunday's earthquake is no different.

About a dozen people, mostly members of Frack Free Mahoning Valley, gathered inside Moser Hall on the YSU campus Wednesday night to listen to Beiersdorfer's update on the Weathersfield incident as well as earthquakes earlier this year in Poland.

He said the Ohio Department of Natural Resources was withholding information about a series of earthquakes near a Hilcorp Energy well in March.

Youngstown News, Study links hundreds of eastern Ohio quakes to fr...    http://www.vindy.com/news/2014/oct/15/study-links-hundreds-of-qua...

JOBS    WHEELS    HOMES    CLASSIFIEDS    Powered by Google

Monday, October 20th, 2014

**Vindy.com**
The Valley's Homepage

Marketplace

News ⌄ | Opinion ⌄ | Sports ⌄ | Entertainment ⌄ | Classifieds ⌄ | Records ⌄ | Discussion ⌄ | Community ⌄ | Contact ⌄ | Neighbors ⌄

Digital Edition  Local  Weather  National & World  Business & Tech  Politics  Fracking  Food  Society  Education  Health & Home  Religion  Travel

Login | Digital Edition | Print Edition

« News Home

## Study links hundreds of eastern Ohio quakes to fracking

3 Comments  Print  Email

Recommend {60}  Tweet {8}  8+1 {8}



Published: Wed, October 15, 2014 @ 12:10 a

Staff/wire report

COLUMBUS

A new study suggests that fracking triggered hundreds of too-small-to-be-felt earthquakes in eastern Ohio late last year, months before the state first linked seismic activity to the oil-and-gas extraction technique in Poland Township.

The report, which appears in the November issue of the journal Seismological Research Letters, identified nearly 400 tremors on a previously unmapped fault in Harrison County between Oct. 1 and Dec. 13, 2013.

That included 10 quakes of magnitudes of 1.7 to 2.2. That's intense enough to have temporarily halted activity under Ohio's new drilling-permit rules had they been in place at the time, but is still considered minor.

The quakes fell along a fault lying directly under three hydraulic-fracturing operations and tended to coincide with nearby activity, researchers found.

About 190 quakes were detected in a single three-day period last October, beginning within hours of the start of fracking. None of the quakes was reported felt by people.

Fracking involves the high-pressure injection of water, sand and chemicals into shale to break up the rock and release trapped oil and gas.

Bethany McCorkle, a spokeswoman for the Ohio Department of Natural Resources, said the state has installed seismic monitoring equipment throughout eastern Ohio over the past year and is keeping close watch for earthquakes strong enough to be felt.

Rowena Lohman, an assistant professor of geophysics at Cornell University who was not involved in the study, said some faults cannot be discovered until underground activity is attempted. She said the latest findings can be used to try to prevent worse quakes.

"We've known for a really long time, going back to the '70s, that when you do any subsurface manipulation you cause small earthquakes," she said. "The big question is: Are we doing something now that increases the probability that it will induce larger quakes?"

Study co-author Paul Friberg, a seismologist at New York-based Instrumental Software Technologies Inc., said fracturing rock results in micro-earthquakes



- Advertisement -

Do-Cut

TORO SNOWBLOWER PRE-SEASON SALE

FREE LAY-AWAYS

Model 38472 NOW ONLY $359⁹⁹

Most Commented ⌄  Most Emailed ⌄  Popular ⌄

Hatefest toward Obama reflects more on haters than on president    (88)

Youngstown ranks as sixth-highest poverty-stricken city in nation    (18)

Austintown schools offering nutritious options    (16)

Boardman teachers get pay raises as renewal levy looms    (13)

UPDATE | Bomb squad at Betras law office in Canfield Township    (12)



Social Service Designee Due to

Confidential, Youngstown, OH

Browse | Submit a Resume | Post a Job

- Advertisement -

The Honda Store

448 Boardman Canfield Rd.
Youngstown, OH 44512
800-211-9345



10/20/2014 1:56 PM

but that some of the Harrison County tremors were significantly larger than expected.

Earthquakes have been linked to fracking operations in the Mahoning Valley since 2011, according to Vindicator files.

A 4.0-magnitude earthquake struck shortly after 3 p.m. on New Year's Eve in 2011 under the D&L Energy Inc. brine-injection well in Youngstown. That well injects brine, a byproduct of fracking, about 9,300 feet into the ground.

That quake followed months of Vindicator reporting about the links between that well and a spate of earthquakes.

Earlier this year, on March 10, an earthquake with a magnitude of 3.0 shook Poland Township. That and subsequent quakes were linked to a fracking operation by Hilcorp Energy Co. at the Carbon Limestone Landfill.

In a March 23 Vindicator story, geologists outside of an ODNR investigation considered the linkage between that fracking operation and the earthquake, something that mining officials previously insisted was not possible.

In April, the ODNR confirmed that fracking was a "probable" trigger of the earthquakes and indicated that fracking aggravated a small, previously undetected fault.

The ODNR imposed a moratorium on drilling at the site but allowed Hilcorp Energy Co. to recover oil and gas from five previously drilled wells, with seismic monitoring at the location.

Other stories of interest

- NanoLogix is seeking partners to produce the kits
- Boardman teachers to get raises after years of pay freezes | Comments (13)
- Various vendors display their Campbell pride
- D&D gives advice on safe use of social media

## Comments

NoBS (1959 comments) *posted 5 days, 5 hours ago*                          1

If we're going to worry about all the quakes that are too minor to feel, then I'd like to know how many of these minor quakes occur naturally, absent any fracking. It's not like this area has never had an earthquake before the start of local hydraulic fracturing.

Suggest removal:    1

walter_sobchak (1922 comments) *posted 5 days, 1 hour ago*                  2

Quakes measuring 1.7 to 2.2 on the scale typically occur at my house the morning after a good meal of Mexican food.

Suggest removal:    1

thirtyninedollars (291 comments) *posted 3 days, 17 hours ago*             3

Earthquakes are/were very rare in this region. That is until fracking happened. Including 1.0 tremors. All of this information is easily available online at the USGS website if you're inclined to actually research.
I guess not though.

Suggest removal:    1